1
2
3
4
5
6

Sarah Shapero (Bar No. 281748)
Dario Puccini (Bar No. 336466)
SHAPERO LAW FIRM, PC
100 Pine St., Ste. 530
San Francisco, CA 94111
Phone: (415) 273-3504 | Fax: (415) 358-4116
sarah@shaperolawfirm.com
dario@shaperolawfirm.com

Attorney for Plaintiff,
DAMIEN KUTZNER

7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAMIEN KUTZNER, an individual;

               Plaintiff,

      v.

NEWREZ, LLC DBA SHELLPOINT
MORTGAGE SERVICING; and DOES 1-50,
inclusive,

            Defendants.

Case No.:

**COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF**

1. Violation of Cal. Civ. Code § 2923.6

2. Violation of Cal. Civ. Code § 2923.7

3. Violation of Cal. Business &
   Professions Code § 17200, et seq.

**DEMAND FOR JURY TRIAL**

1

**PRELIMINARY ALLEGATIONS**

2   1.      In the case at hand, Plaintiff have been battling with Defendant to obtain a loss mitigation

3   option.  Defendant has improperly dual tracked Plaintiff during the loan modification review

4   process by having a trustee's sale scheduled despite Plaintiff having submitted a loan

5   modification application.  This lawsuit follows.

6

**JURISDICTION AND VENUE**

7   2.      This is an action asserting violations of California State Law.  These claims arise out of

8   the same controversy or sequence of events. Plaintiff is a homeowner who bring this action as a

9   result of Defendant's unlawful conduct concerning the mortgage loan secured by the property

10  located at 511 Cliff Drive, Newport Beach, CA 92663 (hereinafter the "Property").

11  3.      Subject Matter Jurisdiction exists in this Court because diversity jurisdiction exists

12  between the two parties.  Plaintiff is a domiciled in California while Defendant has its

13  headquarters located at 1100 Virginia Dr Ste 125, Ft Washington, PA 19034.

14  4.      Venue is proper in this Court because a substantial part of the events giving rise to the

15  claims herein occurred in the County of Orange which is under the jurisdiction of the Central

16  District.

17  5.      The Court has personal jurisdiction over the parties as all Defendants engage in business

18  within the State of California.  Defendants' business involves providing mortgage loans and

19  related services to consumers in the State of California.

20

**PARTIES**

21  6.      At all times mentioned herein, Plaintiff is the owner of the Property located at 511 Cliff

22  Drive, Newport Beach, CA 92663.

23  7.      At all times mentioned herein, Plaintiff is informed and believes and therefore alleges that

24  NEWREZ, LLC DBA SHELLPOINT MORTGAGE SERVICING (hereinafter "SHELLPOINT

25  E") is a diversified financial marketing and/or corporation engaged primarily in residential

26  mortgage banking and/or related business and was the servicer of Plaintiff'' loan during the

27  operative time period herein. Plaintiff is informed and believes and thereon allege that

28  SHELLPOINT regularly conducts business in the State of California.

**AGENCY ALLEGATIONS**

8.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each remaining Defendant.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

**STATEMENT OF FACTS**

9.      Plaintiff DAMIEN KUTZNER ("Plaintiff") at all relevant times, owned the Property located at 511 Cliff Drive, Newport Beach, CA 92663. The Property is a single-family home and has served as Plaintiff's primary residence when he purchased it in 2000.

10.      Plaintiff experienced a financial hardship during his divorce in 2018.

11.      From 2018-2021 Plaintiff moved out of the Property and his ex-wife lived at the property from 2018 to 2021.

12.      During the time Plaintiff's ex-wife lived at the Property, the Property was neglected to the extent that Orange County red-tagged the Property as it was considered unsafe to occupy.

13.      From 2021 to 2022, Plaintiff took over control of the house and started repairs in order to remove the red-tag and to make the Property safe to occupy.

14.      In 2022, Plaintiff completed the repairs to make the Property safe to occupy and Plaintiff moved back into the Property with his children.

15.      In 2022, Plaintiff engaged Defendant Shellpoint about a short sale and turned in a short sale application.

16.      On October 24, 2022, Plaintiff t filed a Complaint with the County of Orange Case No. 30-2022-01288204-CU-OR-CJC for multiple homeowner bill of rights violations, negligence and cancellation of written instruments.  A true and correct copy of the Complaint is attached as **Exhibit A**.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

17.    During discussions with Defendant Shellpoint, Plaintiff agreed to dismissing the action without prejudice in hopes of coming to a solution on a short sale.

18.    On May 10, 2023, Plaintiff dismissed the entire action without prejudice.  A true and correct copy of the Complaint is attached as **Exhibit B**.

19.    Defendant Shellpoint denied three short sale offers, the first for $3,700,000.00, the second for $3,050,000.00, and the third for $3,260,000.00.

20.    Defendant Shellpoint denied Plaintiff's received short sale offer of $3,700,000.00 despite Defendant Shellpoint's appraisal which valued the Property at $3,260,000.00.

21.    Plaintiff then turned in a loan modification application on November 4, 2023, indicating a change in financial circumstances since his last application.

22.    Despite Plaintiff's pending complete loan modification application, Plaintiff is in imminent danger of losing his home at the Trustee's Sale scheduled for November 13, 2023.

<u>SECOND CAUSE OF ACTION</u>
**Violation of Cal. Civ. Code § 2923.6**
**(Against Defendant SHELLPOINTLP)**

23.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

24.    At all times relevant, Plaintiff is the owner of the Property and resided therein as their primary and principal residence.

25.    California Civil Code §2923.6(e) provides, "If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale, or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

26.     California Civil Code § 2923.6(c) of the California Civil Code which provides that "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occur:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

California Civil Code § 2923.6(c).

27.     Plaintiff then turned in a loan modification application on November 4, 2023, indicating a change in financial circumstances since his last application.

28.     Despite Plaintiff's pending complete loan modification application, Plaintiff is in imminent danger of losing his home at the Trustee's Sale scheduled for November 13, 2023.

29.     By attempting to sell Plaintiff property while a loan modification application is pending, Defendant violated Cal. Civ. Code § 2923.6. Pursuant to Civil Code § 2924.12, Plaintiff is entitled to injunctive relief for the material violation and attorney's fees.

**THIRD CAUSE OF ACTION**
**Violation of Cal. Civ. Code § 2923.7**
**(Against Defendant SHELLPOINTLP)**

30.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

31.     California Civil Code § 2923.7(b) requires that a single point of contact [SPOC], among other things, to coordinate the receipt of all documents associated with available foreclosure prevention alternatives and notify the borrower of any missing documents necessary to complete

the application; to ensure that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer; to have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; and have access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

32.    Defendant SHELLPOINT violated California Civil Code § 2923.7(b) by failing to provide Plaintiff with a single point of contact who could carry out all their statutory duties.

33.    Plaintiff's alleged SPOC's failed to ensure that borrowers were considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, and to have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative since Plaintiffs turned in a complete loan modification application and a Trustee's Sale is still scheduled for November 13, 2023, while Plaintiff is still awaiting a written determination of his application.

34.    Plaintiff's alleged SPOC's failed to have access to individuals with the ability and authority to stop foreclosure proceedings when necessary because a Trustee's Sale scheduled for November 13, 2023, despite the fact that Plaintiff has a complete loan modification application pending.

35.    Defendant's violations of California Civil Code § 2923.7, entitles Plaintiff to injunctive relief, as well as attorney's fees.  Cal. Civ. Code § 2924.12(h).  In addition, because Defendant's conduct was intentional, willful, or reckless, Plaintiff is entitled to the greater of the treble actual damages or statutory damages of fifty thousand dollars pursuant to California Civil Code § 2924.12(b).

**FIFTH CAUSE OF ACTION**
**Unfair Competition**
**Violation of Business and Professions Code Section 17200 et seq.**
**(Against Both Defendants)**

36.    Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

37.    Defendant's conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

California Business and Professions Code § 17200 et seq. incorporates and provides a basis for enforcement of violations of other statutes and laws and those violations as a business practice.

38.    Specifically, Defendant's violations of California Civil Codes §§ 2923.6, and 2923.7 constitute unfair business practices in violation of California Business and Professions Code § 17200 *et seq*.

39.    As a result of Defendant's wrongful conduct, Plaintiff has suffered various injuries according to proof at trial, including but not limited to the imminent loss of his home.

40.    Likewise, Plaintiff was injured and suffered actual damages including but not limited to, loss of money and property, loss of reputation and goodwill, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

41.    Plaintiff seeks injunctive relief enjoining Defendant from engaging in the unfair business practices described herein.

42.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained by Defendant for all foreclosure fees and costs during the time Plaintiff was engaged in loss mitigation efforts with the Defendant.

43.    Plaintiff additionally seeks costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

## **DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

2      WHEREFORE, Plaintiff DAMIEN KUTZNER demand a trial by jury.  Plaintiff prays for

3   judgment and order against Defendants, as follows:

4      1.  That judgment is entered in Plaintiff's favor and against Defendants, and each of them;

5      2.  For damages, disgorgement, injunctive relief and attorney's fees and costs;

6      3.  For declaratory relief;

7      4.  For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct

8         and deter future misconduct;

9      5.  For such other and further relief as the Court may deem just and proper.

10

DATED: November 6, 2023              Respectfully submitted,

11

SHAPERO LAW FIRM, PC

12

13

 _/s/ Sarah Shapero_____

14                                     Sarah Shapero
                                       Dario Puccini
15                                     Attorneys for Plaintiff
                                       DAMIEN KUTZNER
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# Exhibit A

Electronically Filed by Superior Court of California, County of Orange, 10/24/2022 08:00:00 AM.
30-2022-01288204-CU-OR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Trent, Deputy Clerk.
#:10

Fernando Leone, Esq. (SBN 147933)
1503 S. Coast Drive, Suite 100B
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com
Attorney for Plaintiffs, Damian Kutzner and Harlen Chase, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE, CENTRAL DISTRICT

30-2022-01288204-CU-OR-CJC

| | |
|---|---|
| DAMIAN KUTZNER; HARLEN CHASE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NEW REZ, LLC DBA SHELLPOINT MORTGAGE SERVICING; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA9 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA9; and DOES 1-10, inclusive, <br><br> Defendant(s). | **PLAINTIFFS' VERIFIED COMPLAINT FOR:** <br><br> 1. **VIOLATION OF CIV. CODE § 2923.5;** <br> 2. **VIOLATION OF CIV. CODE § 2924(a)(1);** <br> 3. **VIOLATION OF CIV. CODE § 2923.6(c);** <br> 4. **VIOLATION OF CIV. CODE § 2923.7;** <br> 5. **VIOLATION OF CIV. CODE § 2924.9;** <br> 6. **VIOLATION OF CIV. CODE § 2924.10;** <br> 7. **NEGLIGENCE;** <br> 8. **UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;** <br> 9. **CANCELLATION OF WRITTEN INSTRUMENTS, CIV.CODE § 3412;** <br><br> **(Amount in controversy less than $75,000)** <br><br> Assigned for All Purposes <br><br> Judge Martha K. Gooding |

**COMES NOW** plaintiffs Damian Kutzner and Harlen Chase, LLC, ("PLAINTIFFS"), by and through their counsel, allege as follows:

## PARTIES

KUTZNER v. NEW REZ, LLC, et al.- PLAINTIFF'S VERIFIED COMPLAINT

1.     PLAINTIFFS are, and at all relevant times mentioned herein were, residents of Orange County, California, and are the rightful and lawful owners of real property commonly known as 511 Cliff Drive, Newport Beach, CA 92663, ("Subject Property"), and is their personal and principal residence.

2.     Defendant New Rez, LLC dba Shellpoint Mortgage Servicing, ("SMS DEFENDANT") is a limited liability company with its principal place of business in Greenville, South Carolina. SMS DEFENDANT conducts, and at all times mentioned herein conducted, business in Orange County, California. Its agent for service of process is Corporation Service Company. SMS DEFENDANT is the purported current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

3.     Defendant The Bank Of New York Mellon fka the Bank of New York, as Trustee for The Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA9 Mortgage Pass-Through Certificates, Series 2006-OA9, ("CWALT DEFENDANT") is a securitized trust with its principal place of business in New York, New York. CWALT DEFENDANT conducts, and at all times mentioned herein conducted, business in Orange County, California. Its agent for service of process is The Bank Of New York Mellon.  CWALT DEFENDANT is the purported current beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

4.     PLAINTIFFS are ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues them by fictitious names. PLAINTIFFS will amend this complaint to allege DOES' true names and capacities when they are ascertained.

5.     PLAINTIFFS allege that DOES 1-10 claim some right, title, estate, lien or interest in the Subject Property that is adverse to PLAINTIFFS' own title. Each of these claims constitutes a cloud on PLAINTIFFS' title to the Subject Property from which they seek relief.

6.     PLAINTIFFS allege that DOES 1-10 are contractually, strictly, negligently, intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted to Plaintiffs as hereinafter alleged.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ.Proc.* §410.10 et seq. because DEFENDANTS engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and substantial justice." DEFENDANTS herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California, such as Plaintiffs herein. As a result, DEFENDANTS caused an event or events to occur in California, and more particularly in Orange County, California, out of which this action arises and which forms the basis of this action.

8.      Venue is proper in this Court pursuant to *Code Civ.Proc.* § 392(a) because DEFENDANTS' liability to Plaintiffs arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties.  PLAINTIFFS are residents of Newport Beach, California. All DEFENDANTS regularly engage in business within Orange County, California, and the real property is located in Orange County, California.

9.      PLAINTIFFS are suing for damages that are related to violation various California statutes and the Homeowner Bill of Rights Act wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## GENERAL AND FACTUAL ALLEGATIONS

10.      PLAINTIFFS allege that on or about May 10, 2006, they obtained a mortgage loan on the Subject Property from Countrywide Home Loans, Inc. in the amount of $2,100,000, memorialized by a Deed of Trust. The maturity due date is on June 1, 2036. The Trustee is Recontrust Company, N.A. This Deed of Trust was recorded in the Orange County, California Recorder's Office as Instrument No. 2006000315581. **(Exhibit "A", Deed of Trust)**

11.      PLAINTIFFS allege that on April 18, 2011, an Assignment of the Deed of Trust was recorded in the Orange County, California Recorder's Office as Instrument No. 2011000195597. This assignment purported to assign the Deed of Trust from Countrywide Home Loans, Inc. to CWALT DEFENDANT. **(See Exhibit "B", Assignment of Deed of Trust)**

12.    PLAINTIFFS allege that on May 30, 2019, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Orange County, California Recorder's Office as Instrument No. 2019000185141. **(See Exhibit "C", Notice of Default and Election to Sell Under a Deed of Trust)**.

13.    PLAINTIFFS allege that on September 27, 2021, a Notice of Trustee's Sale was recorded in the Orange County, California Recorder's Office as Instrument No. 2021000594713. **(See Exhibit "D", Notice of Trustee's Sale).** The sale date was set for November 1, 2021, and was continued to October 31, 2022.

14.    The Notice of Default in 2019 with Community Loan Servicing without evidence of an transfers or assignments. The reinstatement amount is incorrect as it was for May 15, 2019. It is signed by Seaside Trustee, with no Substitution of Trustee having been recorded. The declaration signed by Community Loan Servicing was dated August 12, 2015, 7 years ago. It states that the debt was not reaffirmed in the borrower's discharged Chapter 7 Bankruptcy.

15.    Both the Notice of Default and Notice of Trustee's Sale do not comply with the new regulatory standards that is currently in place These disclosures were passed to give the borrower information as to who is the beneficiary of their loan, etc. Also there is a regulation that clearly states that they can only postpone a Trustee Sale 3 times, and then they must comply with the regulations of publicizing as though it was a new Notice of Trustee's Sale. The Notice of Default is void as it does not contain disclosure information currently in place. No beneficiary was disclosed. It shows Community Loan Servicing and no assignments to SMS DEFENDANT. These instruments should be void.

16.    PLAINTIFFS allege that on August 11, 2022, they submitted a Complete Loan Modification Application ("LMA") to SMS DEFENDANT through their agent Non-Profit Alliance of Consumer Advocates ("NON-PROFIT"), and requested a single point of contact ("SPOC"). **(Exhibit "E", Loan Modification Application)**

17.    PLAINTIFFS allege that on August 16, 2022, NON-PROFIT called SMS DEFENDANT and spoke to Perry Brewer, who provided the SPOC assigned to this file. He stated that it appears to be reviewed for a short sale

18.     PLAINTIFFS allege that on August 24, 2022, NON-PROFIT called SMS DEFENDANT and spoke to Alexis Hanna, who stated that she sees notes that SMS DEFENDANT is reviewing it for a short sale. The short sale was denied on August 19, 2022. However, the reasons with other alternatives to foreclosure was not received by the borrower.

19.     PLAINTIFFS allege that on September 7, 2022, NON-PROFIT received a response to the QWR and Debt validation.

20.     PLAINTIFFS allege that on September 19, 2022, NON-PROFIT called SMS DEFENDANT and spoke to Cherrie Mafee, who stated that the short sale was Closed out (actually denied with no denial letter) and the Modification again no denial letter, appeal and alternatives to foreclosure. Representative is trying to reopen the modification.

21.     PLAINTIFFS allege that on October 12, 2022, NON-PROFIT called SMS DEFENDANT  and spoke to stating that the sale date was moved to October 31, 2022.

22.     PLAINTIFFS allege that on October 17, 2022, NON-PROFIT called SMS DEFENDANT and spoke to Benjamin Jones, who advised that the file is still in review.

23.     There was no 30 day yeah or nay, and the QWR and Debt Validation were late

24.     PLAINTIFFS allege that CWALT DEFENDANT failed to advise PLAINTIFFS in writing within 30 days that their Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g).

## CAUSES OF ACTION/REMEDIES

## FIRST CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2923.5; FAILING TO NOTIFY THE HOMEOWNER ABOUT POSSIBLE FORECLOSURE AND TO WAIT 30 DAYS AFTER NOTICE TO RECORD A NOTICE OF DEFAULT

### (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

25.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein.

26.     Pursuant to Civ.Code §2923.5(a)(2), a mortgage servicer, mortgagee, trustee,

beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until all of the following: Contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, including advising the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.

27.     On May 30, 2019, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFFS were staying in their home when the Notice of Default was issued, and received no mail or messages. **(Exhibit "C")**

28.     SMS DEFENDANT and CWALT DEFENDANT failed to satisfy the requirements of Civ.Code §2923.5(a)(2) before recording a Notice of Default, and violated this statute.

29.     PLAINTIFFS request an injunction and damages.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIV. CODE § 2924(a)(1),**

**LACK OF AUTHORITY TO FORECLOSE ON PROPERTY**

**(AGAINST SMS DEFENDANT and CWALT DEFENDANT)**

30.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein.

31.     PLAINTIFFS are the owners of the Subject Property.

32.     On May 30, 2019, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFFS were staying in their home when the Notice of Default was issued, and received no mail or messages. **(Exhibit "C")**

33.     On September 27, 2021, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Trustee's Sale on the Subject Property. **(See Exhibit "D")**

34.     Civ.Code §2924(a)(1) requires that the trust deed beneficiary or its agent be the one that authorizes the foreclosure proceeding by filing the Notice of Default and related procedures.

The Notice of Default is void because hoth the Notice of Default and Notice of Trustee's Sale do not comply with the new regulatory standards that is currently in place These disclosures were passed to give the borrower information as to who is the beneficiary of their loan, etc. Also there is a regulation that clearly states that they can only postpone a Trustee Sale 3 times, and then they must comply with the regulations of publicizing as though it was a new Notice of Trustee's Sale. The Notice of Default is void as it does not contain disclosure information currently in place. No beneficiary was disclosed. It shows Community Loan Servicing and no assignments to SMS DEFENDANT.  The subsequent Noticed of Trustee's Sale void because they do not have the party with authority to foreclose on the Subject Property, and makes the Trustee's Deed Upon Sale void because it has the incorrect beneficiary foreclosing as well. **(See Exhibits "C", "D").**

35.    SMS DEFENDANT and CWALT DEFENDANT failed to comply with the requirements of Civ.Code § 2924(a)(1) in that the Notice of Default did not include the required statutory requirements: The purported Trustee MTC Financial dba Trustee Corps failed to record a Substitution of Trustee with the Orange County Recorder's Office in violation of Civ. Code §2934a(a)(1), and rendering the Notice of Default and Notice of Trustee's Sale re foreclosure sale void pursuant to Civ. Code §2934a(e) and 2924(a)(6).

36.    PLAINTIFFS have incurred damages for the improper recording of a Notice of Default as it causes immediate damage to a person's credit, causes increased emotional and mental suffering and can cause increased costs being levied based on the Notice of Default being filed which are charged to the loan balance.

37.    These errors in the Notice of Default and Notice of Trustee's Sale give this court proper grounds to vacate the faulty foreclosure procedure.

### THIRD CAUSE OF ACTION

### VIOLATION OF CIV.CODE § 2923.6(c), FAILURE TO RESCIND FORECLOSURE EFFORTS AFTER LOAN MODIFICATION FILED

### (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

38.    PLAINTIFFS re-allege and incorporate herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

39.     On August 11, 2022, PLAINTIFFS submitted a Complete Loan Modification Application to SMS DEFENDANT and CWALT DEFENDANT, and requested the appointment of a Single Point of Contact ("SPOC"). **(See Exhibit "E")**

40.     On May 30, 2019, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFFS were staying in their home when the Notice of Default was issued, and received no mail or messages. **(Exhibit "C")**

41.     On September 27, 2021, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Trustee's Sale on the Subject Property. **(See Exhibit "D")**

42.     Pursuant to Civ.Code § 2923.6(c), "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower s mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee s sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee s sale until any of the following occurs.

(1)     The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2)     The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3)     The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower s obligations under, the first lien loan modification."

(d)     If the borrower s application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer s determination was in error.

(e)     If the borrower s application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee s sale until the later of:

(1)     Thirty-one days after the borrower is notified in writing of the denial.

(2)    If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

43.    SMS DEFENDANT and CWALT DEFENDANT violated Civ.Code § 2923.6(c) by failing to rescind all foreclosure efforts against PLAINTIFFS, including the recording of a Notice of Default or Notice of Trustee's Sale.

44.    PLAINTIFFS request an injunction prior to foreclosure, or civil and statutory penalties post-foreclosure against SMS DEFENDANT and CWALT DEFENDANT in an amount to be determined at trial if post-foreclosure.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIV.CODE § 2923.7 – FAILURE TO ASSIGN A SINGLE POINT OF CONTACT

### (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

45.    PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein. PLAINTIFFS reside in said residence as their principal place of residence.

46.    On August 11, 2022, PLAINTIFFS submitted a Complete Loan Modification Application to SMS DEFENDANT and CWALT DEFENDANT, and requested the appointment of a Single Point of Contact ("SPOC"). **(See Exhibit "E")**

47.    PLAINTIFFS allege that SMS DEFENDANT failed to assign a "SPOC" within a reasonable time after receipt of the loan modification application.

48.    PLAINTIFFS continued to rely on the fact that their application was being reviewed.

49.    This is a material violation of Civ.Code §2923.7 because in failing to assign a SPOC, the entity has prevented PLAINTIFFS' chances for a successful submission of the proper papers to complete a loan modification package to save the Subject Property from foreclosure, and the resultant loss of equity and a place to live for PLAINTIFFS' and their dependents.

50.    PLAINTIFFS request an injunction prior to foreclosure, or civil and statutory penalties post-foreclosure against SMS DEFENDANT in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2924.9, FAILURE TO PROVIDE HOMEOWNER WITH FORECLOSURE ALTERNATIVES

### (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

51.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein.

52.     On May 30, 2019, SMS DEFENDANT and CWALT DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFFS were staying in their home when the Notice of Default was issued, and received no mail or messages. **(Exhibit "C")**

53.     SMS DEFENDANT and CWALT DEFENDANT failed to notify PLAINTIFFS of all foreclosure prevention alternatives within 5 business days after Notice of Default recorded, as required by Civ.Code §2924.9.

54.     PLAINTIFFS were living in the Subject Property when the Notice of Default was recorded. PLAINTIFFS did not receive any phone calls or phone messages, and did not receive any pieces of mail that referred to discussions about alternatives to foreclosure before it was commenced. If PLAINTIFFS did receive such contact and communication, they would have taken action to avoid the foreclosure of the Subject Property with other lending sources.

55.     PLAINTIFFS are entitled to an injunction prior to foreclosure, or civil and statutory penalties post-foreclosure against SMS DEFENDANT and CWALT DEFENDANT in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2924.10, FAILURE TO PROVIDE HOMEOWNER WITH WRITTEN NOTICE OF RECEIPT OF LOAN MODIFICATION APPLICATION

### (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

56.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein.

57.     On August 11, 2022, PLAINTIFFS submitted a Complete Loan Modification

Application to SMS DEFENDANT and CWALT DEFENDANT, and requested the appointment of a

Single Point of Contact ("SPOC"). **(See Exhibit "E")**

58.     SMS DEFENDANT failed to provide written notice to PLAINTIFFS of receipt of loan

modification application within 5 business days of receipt.

59.     The failure to advise PLAINTIFFS if their loan modification request was received by

DEFENDANTS is a material violation of the statute. This is because it jeopardizes PLAINTIFFS' right

to submit a timely loan modification package while a pending foreclosure is in process, which could

result in the loss of equity in the Subject Property, and the loss of a place to live for PLAINTIFFS and

their dependents.

60.     PLAINTIFFS is entitled to an injunction prior to foreclosure or civil and statutory

penalties post-foreclosure against SMS DEFENDANT and CWALT DEFENDANT in an amount to be

proven at trial.

<u>**SEVENTH CAUSE OF ACTION**</u>

<u>**NEGLIGENCE**</u>

**(AGAINST SMS DEFENDANT and CWALT DEFENDANT)**

61.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth

fully herein.

62.     PLAINTIFFS allege that SMS DEFENDANT and CWALT DEFENDANT breached

their duty of ordinary care and good faith to PLAINTIFFS, and their duty not to put PLAINTIFFS in a

worse position when they:

   a.   Failed to notify the homeowner about possible foreclosure and to wait 30 days
        after notice to record a Notice of Default in violation of Civ.Code §2923.5.

   b.   Used a Trustee, Servicer or Beneficiary that lacked legal authority to conduct the
        Trustee's Sale in violation of Civ. Code § 2924 (a)(1), Civ. Code §2934a(a)(1),
        2934(a)(e), 2924(a)(6) and 2924(a)(6);

   c.   Failed to rescind all foreclosure activity upon the application for a loan
        modification application in violation of Civ.Code §2923.6(c);

   d.   Failed to provide PLAINTIFFS with a Single Point of Contact in violation of

Civ. Code §2937;

    e.   Failed to notify PLAINTIFFS of foreclosure alternatives within 5 business days after recording a Notice of Default in violation of Civ. Code § 2924.9;

    f.   Failed to provide written acknowledgement of receipt of a loan modification application in violation of Civ. Code § 2924.10;

    g.   Violated Title 15 U.S.C. § 1641(g) by failing to contact PLAINTIFFS after recording an Assignment of the Deed of Trust and notify the that it is the new beneficiary of the Deed of Trust.

63.    SMS DEFENDANT and CWALT DEFENDANT owed PLAINTIFFS a duty of care because their activities violated affirmative statutory duties extrinsic to loan modification.

64.    SMS DEFENDANT and CWALT DEFENDANT's breaches are the ***actual*** and ***proximate cause*** of PLAINTIFFS' damages because, but for their breaches of statutory duties, PLAINTIFFS' would not be facing foreclosure. If SMS DEFENDANT and CWALT DEFENDANT acted reasonably and lawfully carrying out their statutory duties, PLAINTIFFS would have avoided a large arrears and large interest, penalties and a weakened position in negotiating the foreclosure issue at hand.

65.    As a consequence of SMS DEFENDANT and CWALT DEFENDANT's practice in this regard, PLAINTIFFS suffered damages by **(1)** costs and attorneys' fees spending numerous hours and resources in providing them with updated financial documents; **(2)** incurred additional and unnecessary late penalties on top of the default servicing which included the recording of the Notice of Sale; **(3)** damaged their credit reports in the process; and **(4)** higher arrears that is no longer affordable to PLAINTIFFS; and faces foreclosure.

66.    PLAINTIFFS demand restitution damages in an amount to be determined at trial and to disgorge SMS DEFENDANT and CWALT DEFENDANT's profits. PLAINTIFFS incurred copying and faxing costs and attorney fees in the loan modification application process.

//

//

//

**EIGHTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.**

**(AGAINST SMS DEFENDANT and CWALT DEFENDANT)**

67.     PLAINTIFFS re-allege and incorporate all preceding paragraphs as though set forth fully herein.

68.     SMS DEFENDANT is engaged in the business of lending money for real property purchases and selling mortgages/deed of trust as secured loans, and or servicing those loans.

69.     CWALT DEFENDANT is engaged in the business of securitized, real estate investment trust on Wall Street, New York City, New York.

70.     PLAINTIFFS allege that SMS DEFENDANT and CWALT DEFENDANT violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful, unfair, and fraudulent business practices as alleged above.

71.     SMS DEFENDANT and CWALT DEFENDANT violated the Homeowners' Bill of Rights by failing to timely and fairly evaluate PLAINTIFFS' application for loan modification.

72.     PLAINTIFFS allege that SMS DEFENDANT and CWALT DEFENDANT negligently made false representations. SMS DEFENDANT and CWALT DEFENDANT's negligent conduct is likely to deceive members of the public generally because they offered modifications, but not actual assistance with such actions as described herein.

73.     PLAINTIFFS allege that SMS DEFENDANT and CWALT DEFENDANT violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFFS when they:

      a.  Implemented a severely flawed loss mitigation review process in which borrowers, like PLAINTIFFS, are persuaded to rely on SMS DEFENDANT and CWALT DEFENDANT's loan modification review process;

      b.  The process is purposefully lengthy so that loss mitigation and loan modification will not be timely provided. SMS DEFENDANT and CWALT DEFENDANT purposefully caused a lengthy delay in order to cause PLAINTIFFS and borrowers like PLAINTIFFS to incur continuing interest charges that would

otherwise be mitigated, late fees, and ultimately foreclosure costs that would erode a borrower's equity or severely diminish any possibility for future equity;

c. SMS DEFENDANT and CWALT DEFENDANT purposefully impeded timely loss mitigation denial or approval while expressing that PLAINTIFFS are in review prevents PLAINTIFFS from seeking other external loss mitigation options including abandoning the property and/or short sale;

d. Ignored PLAINTIFFS' communications and failed to communicate with PLAINTIFFS regarding the financial distress regarding mortgage loan repayment;

e. Purposely violated Civ. Code §§2923.5, 2924(a)(1), 2934a(a)(1), 2924a(e), 2924(a)(6), 2923.6(c), 2923.7, 2924.9, 2924.10.

74. SMS DEFENDANT and CWALT DEFENDANT's business practices of failing to advise homeowners in writing within 30 days that their Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g).

75. These acts and more are unlawful and unfair conduct has caused substantial harm to PLAINTIFFS and the California citizenry at large.

76. A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

77. In the present case, the information provided to PLAINTIFFS was certainly misleading and not consistent as to the status of the loan modification and what she was supposed to do to satisfy the lender's demands.

78. PLAINTIFFS have suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for SMS DEFENDANT and CWALT DEFENDANT's wrongful actions.

79. Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.,* 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFFS have stated a viable UCL claim.

80. PLAINTIFFS demand restitution, and that SMS DEFENDANT and CWALT

DEFENDANT disgorge their illicit profits and that PLAINTIFFS receive all monetary awards statutorily due to them.

## NINTH CAUSE OF ACTION

## CANCELLATION OF WRITTEN INSTRUMENTS, CIV. CODE § 3412

## (AGAINST SMS DEFENDANT and CWALT DEFENDANT)

81.    PLAINTIFFS re-allege and incorporate by reference all proceeding paragraphs as though fully set forth herein.

82.    PLAINTIFFS have a reasonable belief that the Notice of Default, instrument no. 2019000185141 and Notice of Trustee's Sale, instrument no. 2021000594713 are voidable or void ab initio. **(Exhibits "C" and "D")**

83.    PLAINTIFF has a reasonable apprehension that if these voidable or void ab initio recorded written instruments are left outstanding, they may cause serious injury to PLAINTIFF because of their violations of Civ. Code §§2923.5, 2924(a)(1), 2934a(a)(1), 2924(a)(6), 2924a(e), 2923.6(c), 2923.7, 2924.9, 2924.10.

84.    PLAINTIFFS seek to cancel the hereinabove written instruments pursuant to Civ.Code §3412 due to their being voidable or void, clouds on title and wrongfully recorded.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment in their favor and against DEFENDANTS and each of them as follows:

1.    For compensatory, special and general damages in an amount subject to proof at trial;

2.    For civil penalties pursuant to Civ.Code § 2924.12 (b) for the greater of treble damages or $50,000.

3.    For an injunction enjoining DEFENDANTS from conducting further foreclosure activity in particular, recording a Notice of Default, Notice of Trustee's Sale and/or conducting a Trustee's Sale, or recording a Trustee's Deed Upon Sale against the Subject Property pursuant to Civ.Code § 2924.12(b);

4.    For restitution and the disgorgement of profits;

5.    For an injunction stopping the violations of the HBOR statutes;

6.      For an injunction cancelling the void or voidable written instruments;

7.      For an order awarding PLAINTIFFS reasonable attorney's fees pursuant to Civ.Code § 2924.12 (h);

8.      For reasonable costs of suit pursuant to Code Civ.Proc. § 1032;

9.      For recompense of damages and arrears; and

10.     For any other relief as it may deem just and proper.


DATED:  October 21, 2022              CDLG, PC


                              BY:    _Fernando Leone_____
                                     Fernando Leone, Esq.,
                                     Attorney for Plaintiffs,
                                     Damian Kutzner and Harlen Chase, LLC

16

KUTZNER  v. NEW REZ, LLC, et al.- PLAINTIFF'S VERIFIED COMPLAINT

# EXHIBIT "A"

**FIDELITY NATIONAL TITLE**
**MCLPC**

Recording Requested By:
S. GLASS

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   **75.00**

**2006000315581 04:01pm 05/10/06**

113 28 D11 24

0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ATOSA TOLOTI

39143865-AF

———— [Space Above This Line For Recording Data] ————

4432-DS                          00013633086005006
[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

MIN 1001337~0001365247-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 03, 2006          , together
with all Riders to this document.

(B) "Borrower" is
DAMIAN R KUTZNER, A SINGLE MAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP®  -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291         Form 3005  1/01
CONV/VA





DOC ID #: 00013633086005006

Borrower's address is
511 CLIFF DRIVE, NEWPORT BEACH, CA 92663
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
MSN TO-02 225 WEST HILLCREST DRIVE, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MAY 03, 2006            . The Note states that Borrower owes Lender
TWO MILLION ONE HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 2,100,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JUNE 01, 2036              .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00013633086005006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 049-201-05                which currently has the address of
511 CLIFF DRIVE, NEWPORT BEACH

[Street/City]

California    92663    ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)    CHL (08/05)    Page 3 of 16    Form 3005 1/01

DOC ID #: 00013633086005006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00013633086005006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00013633086005006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00013633086005006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00013633086005006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 00013633086005006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00013633086005006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00013633086005006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 0001363308600S006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00013633086005006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

DOC ID #: 00013633086005006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00013633086005006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



DAMIAN R. KUTZNER                                    _____ (Seal)
                                                     -Borrower

                                                     _____ (Seal)
                                                     -Borrower

                                                     _____ (Seal)
                                                     -Borrower

                                                     _____ (Seal)
                                                     -Borrower

DOC ID #: 00013633086005006

**State of California**
**County of** Orange } ss.

On May 4, 2000 before me, Alejandra Rodarte personally appeared

Damian Fitzner

_____

_____

_____

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

ALEJANDRA RODARTE
COMM. # 1436218
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. SEPT. 8, 200...



Government Code 27361.7

I certify under penalty of perjury that the notary acknowledgment on the document to which this statement is attached reads as follows:

Name of Notary:  Alejandra Rodarte

Commission #:  1438218

County in which Bond is Filed   Orange

Date Commission Expires:                         9/8/2007

Manufacturer / Vendor No   MCG1

_____          Date:   Wednesday, May 10, 2006
Fidelity National Title

Santa Ana, Ca
Place of Execution

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

<table>
<tr><td>4432-DS</td><td>00013633086005006</td></tr>
<tr><td>[Escrow/Closing #]</td><td>[Doc ID #]</td></tr>
</table>

THIS ADJUSTABLE RATE RIDER is made this  THIRD                  day of
MAY, 2006           , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

511 CLIFF DRIVE
NEWPORT BEACH, CA 92663
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**• PayOption MTA ARM Rider
1E310-XX (09/05)(d)**              Page 1 of 6





DOC ID #: 0001363308600

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of       6.625 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of       2.250 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first                    day of JULY, 2006                , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding                TWO & 525/1000 percentage point(s) (      2.525 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than       9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

* **PayOption MTA ARM Rider**
**1E310-XX (09/05)**                        Page 2 of 6

DOC ID #: 00013633086005006

I will make my monthly payments on the FIRST                day of each month beginning on July, 2006                . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JUNE 01, 2036           , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.$ 8,027.17                       , unless adjusted under Section 3 (F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first         day of JULY, 2007             , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than    7.500%  of my prior monthly payment. This    7.500%  limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

• PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 3 of 6

DOC ID #: 00013633086005006

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My   unpaid   Principal   can   never   exceed   the   Maximum   Limit   equal   to ONE HUNDRED FIFTEEN percent (          115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth            Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

DOC ID #: 00013633086005006

(iii) **15 Year Amortized Payment**: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

DOC ID #: 00013633086005006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
DAMIAN R. KUTZNER                                    -Borrower

_____
                                                     -Borrower

_____
                                                     -Borrower

_____
                                                     -Borrower

● PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 6 of 6

# EXHIBIT "A"

Lot 85, Tract 1218, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 37, Pages 47, 48 and 49 inclusive of Maps, in the office of the County Recorder of said County.

Assessor's Parcel No: 049-201-05

(Rev. 11/17/04)

# EXHIBIT "B"

**LANDSAFE TITLE**

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA  93063

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **9.00**

**2011000195597 08:00am 04/18/11**

37 402 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

TS No. 08-0032285

08-8-136989

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA9 MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2006-OA9**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/03/2006, EXECUTED BY:
DAMIAN R KUTZNER, A SINGLE MAN, TRUSTOR: TO RECONTRUST COMPANY, N.A., TRUSTEE AND
RECORDED AS INSTRUMENT NO. 2006000315581 ON 05/10/2006, OF OFFICIAL RECORDS IN THE COUNTY
RECORDER'S OFFICE OF ORANGE  COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: April 14, 2008

APR 1 3 2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

BY: _____  4/13/2011

Kevin Rudolph, Assistant Secretary

State of: **CALIFORNIA**               )

County of: **VENTURA**               )

On **APR 13 2011**    before me,    **AHMAD AFZAL** _____, notary public, personally appeared
_____**KEVIN RUDOLPH**_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____  (Seal)

AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form asgnmnt (01/09)*

# EXHIBIT "C"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 90.00
* $ R 0 0 1 0 8 6 9 4 7 8 $ *

**2019000185141 2:18 pm 05/30/19**
217 406 N15   3
0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

RECORDING REQUESTED BY:

~~AND~~

WHEN RECORDED MAIL TO:
**Seaside Trustee Inc.**
**P.O. Box 752377**
**Las Vegas, Nevada 89136**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **1900123CA**
Property Address: **511 CLIFF DRIVE, NEWPORT BEACH, CA 92663**
A.P.N.: **049-201-05**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
**注：本文件包含一个信息摘要**
**참고사항: 본 첨부 문서에 정보 요약서가 있습니다**
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$1,664,577.55** as of **5/15/2019**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

TS No.: 1900123CA

you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Bayview Loan Servicing, LLC.**
**4425 Ponce De Leon Blvd., 5th Floor**
**Coral Gables, Fl. 33146**
**Phone: (800)457-5105**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Seaside Trustee Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **5/3/2006**, executed by **DAMIAN R KUTZNER, A SINGLE MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**, as beneficiary, recorded **5/10/2006**, as Instrument No. **2006000315581**, in Book , Page , of Official Records in the Office of the Recorder of **Orange** County, California describing land therein as: LOT 85, TRACT 1218, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 37, PAGES 47, 48, AND 49 INCLUSIVE OF MAPS, IN THE OFFICE OF COUNTY RECORDER OF SAID COUNTY.

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$2,100,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
**Installment of Principal and Interest plus impounds and/or advances which became due on 11/1/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Federal law requires us to advise you that we may be a debt collector and that this is or may be an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

**Dated: 5/28/2019**

Seaside Trustee Inc.

BY: _____
**Esther Valenzuela, Authorized Signatory for Trustee**

## Declaration of Mortgage Servicer Pursuant to Civil Code §2923.55(c)

Borrower(s): DAMIAN R KUTZNER
Mortgage Servicer: Bayview Loan Servicing, LLC
Property Address: 511 CLIFF DRIVE NEWPORT BEACH, CA 92663
Loan No.: 596069
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have; passed since the initial contact was made.

2. ☐ Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the Mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

4. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

5. ☒ The requirements of Cal. Civil Code § 2923.55 do not apply because:

   a._____ The secured property is non-owner occupied.

   b._____ The secured property is commercial or vacant land.

   c. __x__ The secured property is exempt from due diligence, the debt was not reaffirmed in the borrower's discharged chapter 7 bk

   d. ____ The secured property is exempt from due diligence, the property was surrendered in the borrower's discharged chapter 11 or 13 bk

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Bayview Loan Servicing, LLC

Dated: 08/12/2015 .

By:_____

Gregory Harrison

Operations Quality Assurance Analyst

# EXHIBIT "D"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||| 91.00
* $ R 0 0 1 3 1 9 7 4 1 0 $ *

2021000594713 8:26 am 09/27/21
340 RW10A N29   3
0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

RECORDING REQUESTED BY:

OLD REPUBLIC TITLE

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

APN: 049-201-05              TS No: CA08000378-19-1-FT              TO No: 02-19045247

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED May 3, 2006. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **November 1, 2021** at **09:00 AM, Auction.com Room, Doubletree by Hilton Hotel Anaheim -
Orange County, 100 The City Drive, Orange, CA 92868, MTC Financial Inc. dba Trustee Corps**, as
the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of
Trust Recorded on May 10, 2006 as Instrument No. 2006000315581, of official records in the Office of the
Recorder of Orange County, California, executed by DAMIAN R KUTZNER, A SINGLE MAN, as
Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as
nominee for COUNTRYWIDE HOME LOANS, INC. as Beneficiary, **WILL SELL AT PUBLIC AUCTION
TO THE HIGHEST BIDDER,** in lawful money of the United States, all payable at the time of sale, that
certain property situated in said County, California describing the land therein as: **AS MORE FULLY
DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common
designation, if any, of the real property described above is purported to be: **511 CLIFF DRIVE,
NEWPORT BEACH, CA 92663**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $3,608,126.58 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA08000378-19-1-FT

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Auction.com at 800.280.2832 for information regarding the Trustee's Sale or visit the Internet Website address www.Auction.com for information regarding the sale of this property, using the file number assigned to this case, CA08000378-19-1-FT. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

## Notice to Tenant

NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 800.280.2832, or visit this internet website https://tracker.auction.com/sb1079/, using the file number assigned to this case CA08000378-19-1-FT to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: September 22, 2021

MTC Financial Inc. dba Trustee Corps
TS No. CA08000378-19-1-FT
17100 Gillette Ave
Irvine, CA 92614
Phone:949-252-8300
TDD: 866-660-4288

_____
Amy Lemus, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.Auction.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Auction.com at 800.280.2832**

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

TS No: CA08000378-19-1-FT

# EXHIBIT "E"

## UNIFORM BORROWER ASSISTANCE FORM

If you are experiencing a temporary or long-term hardship and need help, you must complete and submit this form along with other required documentation to be considered for available solutions. On this page, you must disclose information about (1) you and your intentions to either keep or transition out of your home; (2) the property's status; (3) bankruptcy; and (4) your credit counseling agency.

On Page 2, you must disclose information about **all** of your income, expenses and assets. Page 2 also lists the required income documentation that you must submit in support of your request for assistance. Then on Page 3, you must complete the Hardship Affidavit in which you disclose the nature of your hardship. The Hardship Affidavit informs you of the required documentation that you must submit in support of your hardship claim.

**NOTICE:** In addition, when you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this Borrower Assistance Form is accurate and truthful and any identified hardship has contributed to your submission of this request for mortgage relief.

**REMINDER:** The Borrower Response Package you need to return consists of: (1) this completed, signed and dated Borrower Assistance Form; (2) completed and signed IRS Form 4506T-EZ (4506T for self-employed borrowers or borrowers with rental income); (3) required income documentation; and (4) required hardship documentation.

| Loan Number | 0579483095 | (usually found on your monthly mortgage statement) |
| Servicer's Name | Shellpoint | |

| I want to: | ☒ Keep the Property | ☐ Vacate the Property | ☐ Sell the Property | ☐ Undecided |
| The property is currently: | ☒ My Primary Residence | ☐ A Second Home | ☐ An Investment Property | |
| The property is currently: | ☒ Owner Occupied | ☐ Renter Occupied | ☐ Vacant | |

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER'S NAME  Damian Kutzner | CO-BORROWER'S NAME |
| SOCIAL SECURITY NUMBER ▇▇▇▇ | SOCIAL SECURITY NUMBER | DATE OF BIRTH |
| HOME ▇▇▇ | HOME PHONE NUMBER WITH AREA CODE |
| CELL OR WORK NUMBER WITH AREA CODE  (949) 903-1965 | CELL OR WORK NUMBER WITH AREA CODE |

MAILING ADDRESS
511 Cliff Dr. Newport Beach CA 92663.

PROPERTY ADDRESS (IF SAME AS MAILING ADDRESS, JUST WRITE SAME)     EMAIL ADDRESS
511 Cliff Dr. Newport Beach CA 92663. Kutzner22@outlook.com

| Is the property listed for sale? ☐ Yes ☒ No | Have you contacted a credit counseling agency for help? |
| If yes, what was the listing date? _____ | ☐ Yes ☒ No |
| If property has been listed for sale, have you received an offer on the property? ☐ Yes ☒ No | If yes, please complete the counselor contact information below: |
| Date of offer: _____ Amount of Offer: $ _____ | Counselor's Name: _____ |
| Agent's Name: _____ | Agency's Name: _____ |
| Agent's Phone Number: _____ | Counselor's Phone Number: _____ |
| For Sale by Owner? ☐ Yes ☒ No | Counselor's Email Address: _____ |

| Do you have condominium or homeowner association (HOA) fees? ☐ Yes ☒ No |
| Total monthly amount: $ _____     Name and address that fees are paid to: |

| Have you filed for bankruptcy? ☐ Yes ☒ No | If yes: ☐ Chapter 7 | ☐ Chapter 11 | ☐ Chapter 12 | ☐ Chapter 13 |
| If yes, what is the filing Date: _____ Has your bankruptcy been discharged? ☐ Yes | ☐ No | Bankruptcy case number: _____ |

| Is any Borrower an active duty service member? | ☐ Yes ☒ No |
| Has any Borrower been deployed away from his/her primary residence or received a Permanent Change of Station order? | ☐ Yes ☒ No |
| Is any Borrower the surviving spouse of a deceased service member who was on active duty at the time of death? | ☐ Yes ☒ No |

## UNIFORM BORROWER ASSISTANCE FORM

| Monthly Household Income | | Monthly Household Expenses and Debt Payments | | Household Assets (associated with the property and/or borrower(s)excluding retirement funds) | |
|---|---|---|---|---|---|
| Gross wages | $4,000 | First Mortgage Payment | $9,200 | Checking Account(s) | $ |
| Overtime | $ | Second Mortgage Payment | $ | Checking Account(s) | $ |
| Child Support / Alimony* | $ | Homeowner's Insurance | $100 | Savings / Money Market | $ |
| Non-taxable social security/SSDI | $ | Property Taxes | $1,537 | CDs | $ |
| Taxable SS benefits or other monthly income from annuities or retirement plans | $ | Credit Cards / Installment Loan(s) (total minimum payment per month) | $ | Stocks / Bonds | $ |
| Tips, commissions, bonus and self-employed income | $ | Alimony, child support payments | $ | Other Cash on Hand | $ |
| Rents Received | $1,500 | Car Gasoline | $300 | Other Real Estate (estimated value) | $ |
| Unemployment Income | $ | Food | ces $250 | Other | $ |
| Food Stamps/Welfare | $ | Utilities | rties $300 | | $ |
| Other | $ | Other | $ | | $ |
| Total (Gross income) | $17,000 | Total Household Expenses and Debt Payments | $ | Total Assets | $11,769 |

| Any other liens (mortgage liens, mechanics liens, tax liens, etc.) | | | |
|---|---|---|---|
| Lien Holder's Name | Balance and Interest Rate | Loan Number | Lien Holder's Phone Number |
| | | | |
| | | | |
| | | | |

### Required Income Documentation

☐ **Do you earn a salary or hourly wage?**
For each borrower who is a salaried employee or paid by the hour, include paystub(s) reflecting the most recent 30 days' earnings and documentation reflecting year-to-date earnings, if not reported on the paystubs (e.g. signed letter or printout from employer).

☐ **Are you self-employed?**
For each borrower who receives self-employed income, include a complete, signed individual federal income tax return and, as applicable, the business tax return; AND either the most recent signed and dated quarterly or year-to-date profit/loss statement that reflects activity for the most recent three months; OR copies of bank statements for the business account for the last two months evidencing continuation of business activity.

☐ **Do you have any additional sources of income?** Provide for each borrower as applicable:
**"Other Earned Income"** such as bonuses, commissions, housing allowance, tips, or overtime:
☐ Reliable third-party documentation describing the amount and nature of the income (e.g., paystub, employment contract or printouts documenting tip income).
**Social Security, disability or death benefits, pension, public assistance, or adoption assistance:**
☐ Documentation showing the amount and frequency of the benefits, such as letters, exhibits, disability policy or benefits statement from the provider, and
☐ Documentation showing the receipt of payment, such as copies of the two most recent bank statements showing deposit amounts.
**Rental income:**
☐ Copy of the most recent filed federal tax return with all schedules, including Schedule E—Supplement Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent you reported reduced by the monthly debt service on the property, if applicable; or
☐ If rental income is not reported on Schedule E – Supplemental Income and Loss, provide a copy of the current lease agreement with either bank statements or cancelled rent checks demonstrating receipt of rent.
**Investment income:**
☐ Copies of the two most recent investment statements or bank statements supporting receipt of this income.
**Alimony, child support, or separation maintenance payments as qualifying income:***
☐ Copy of divorce decree, separation agreement, or other written legal agreement filed with a court, or court decree that states the amount of the alimony, child support, or separation maintenance payments and the period of time over which the payments will be received, and
☐ Copies of your two most recent bank statements or other third-party documents showing receipt of payment.

*Notice: Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered for repaying this loan.

## UNIFORM BORROWER ASSISTANCE FORM

### HARDSHIP AFFIDAVIT

I am requesting review of my current financial situation to determine whether I qualify for temporary or permanent mortgage loan relief options.      Date Hardship Began is: 1-1-2016

I believe that my situation is:

☒ Short-term (under 6 months)   ☐ Medium-term (6 – 12 months)   ☐ Long-term or Permanent Hardship (greater than 12 months)

**I am having difficulty making my monthly payment because of reason set forth below:**
*(Please check the primary reason and submit required documentation demonstrating your primary hardship)*

| If Your Hardship is: | Then the Required Hardship Documentation is: |
|---|---|
| ☐ Unemployment | ☐ No hardship documentation required |
| ☒ Reduction in Income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | ☐ No hardship documentation required |
| ☐ Increase in Housing Expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control | ☐ No hardship documentation required |
| ☐ Divorce or legal separation; Separation of Borrowers unrelated by marriage, civil union or similar domestic partnership under applicable law | ☐ Divorce decree signed by the court; OR<br>☐ Separation agreement signed by the court; OR<br>☐ Current credit report evidencing divorce, separation, or non-occupying borrower has a different address; OR<br>☐ Recorded quitclaim deed evidencing that the non-occupying Borrower or co-Borrower has relinquished all rights to the property |
| ☐ Death of a borrower or death of either the primary or secondary wage earner in the household | ☐ Death certificate; OR<br>☐ Obituary or newspaper article reporting the death |
| ☐ Long-term or permanent disability; Serious illness of a borrower/co-borrower or dependent family member | ☐ Proof of monthly insurance benefits or government assistance (if applicable); OR<br>☐ Written statement or other documentation verifying disability or illness; OR<br>☐ Doctor's certificate of illness or disability; OR<br>☐ Medical bills<br>None of the above shall require providing detailed medical information. |
| ☐ Disaster (natural or man-made) adversely impacting the property or Borrower's place of employment | ☐ Insurance claim; OR<br>☐ Federal Emergency Management Agency grant or Small Business Administration loan; OR<br>☐ Borrower or Employer property located in a federally declared disaster area |
| ☐ Distant employment transfer / Relocation | **For active duty service members:** Notice of Permanent Change of Station (PCS) or actual PCS orders.<br>**For employment transfers/new employment:**<br>☐ Copy of signed offer letter or notice from employer showing transfer to a new employment location; OR<br>☐ Pay stub from new employer; OR<br>☐ If none of these apply, provide written explanation<br>In addition to the above, documentation that reflects the amount of any relocation assistance provided, if applicable (not required for those with PCS orders). |
| ☐ Business Failure | ☐ Tax return from the previous year (including all schedules) AND<br>☐ Proof of business failure supported by one of the following:<br>  ☐ Bankruptcy filing for the business; OR<br>  ☐ Two months recent bank statements for the business account evidencing cessation of business activity; OR<br>  ☐ Most recent signed and dated quarterly or year-to-date profit and loss statement |
| ☐ Other: a hardship that is not covered above | ☐ Written explanation describing the details of the hardship and relevant documentation |

## Borrower/Co-Borrower Acknowledgement and Agreement

I certify, acknowledge, and agree to the following:

1. All of the information in this Borrower Assistance Form is truthful and the hardship that I have identified contributed to my need for mortgage relief.

2. The accuracy of my statements may be reviewed by the Servicer, owner or guarantor of my mortgage, their agent(s), or an authorized third party*, and I may be required to provide additional supporting documentation. I will provide all requested documents and will respond timely to all Servicer, or authorized third party*, communications.

3. Knowingly submitting false information may violate Federal and other applicable law.

4. If I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this request for mortgage relief or if I do not provide all required documentation, the Servicer may cancel any mortgage relief granted and may pursue foreclosure on my home and/or pursue any available legal remedies.

5. The Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

6. I may be eligible for a trial period plan, repayment plan, or forbearance plan. If I am eligible for one of these plans, I agree that:

   a. All the terms of this Acknowledgment and Agreement are incorporated into such plan by reference as if set forth in such plan in full.

   b. My first timely payment under the plan will serve as acceptance of the terms set forth in the notice of the plan sent by the Servicer.

   c. The Servicer's acceptance of any payments under the plan will not be a waiver of any acceleration of my loan or foreclosure action that has occurred and will not cure my default unless such payments are sufficient to completely cure my entire default under my loan.

   d. Payments due under a trial period plan for a modification will contain escrow amounts. If I was not previously required to pay escrow amounts, and my trial period plan contains escrow amounts, I agree to the establishment of an escrow account and agree that any prior waiver is revoked. Payments due under a repayment plan or forbearance plan may or may not contain escrow amounts. If I was not previously required to pay escrow amounts and my repayment plan or forbearance plan contains escrow amounts, I agree to the establishment of an escrow account and agree that any prior escrow waiver is revoked.

7. A condemnation notice has not been issued for the property.

8. The Servicer or authorized third party* will obtain a current credit report on all borrowers obligated on the Note.

9. The Servicer or authorized third party* will collect and record personal information that I submit in this Borrower Response Package and during the evaluation process. This personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my social security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity. I understand and consent to the Servicer or authorized third party*, as well as any investor or guarantor (such as Fannie Mae or Freddie Mac), disclosing my personal information and the terms of any relief or foreclosure alternative that I receive to the following:

   a. Any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) or any companies that perform support services to them; and

   b. The U.S. Department of Treasury, Fannie Mae and Freddie Mac, in conjunction with their responsibilities under the Making Home Affordable program, or any companies that perform support services to them.

10. I consent to being contacted concerning this request for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the Lender/Servicer/ or authorized third party*. By checking this box, I also consent to being contacted by ☐ text messaging.

| _____ | 10/18/22 | _____ | _____ |
| Borrower Signature | Date | Co-Borrower Signature | Date |

*An authorized third party may include, but is not limited to, a counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

**HARDSHIP LETTER**

Please use the following space to provide a detailed explanation of your hardship:

WAS GIVEN A NEGATIVE AMORTIZATION
LOAN, THE PRINCIPAL & PAYMENT KEPT
INCREASING. ALSO DUE TO COVID-19
A HAVE BEEN OUT OF WORK

_____     10/10/22     _____     _____
Borrower Signature            Date          Co-Borrower Signature       Date

# Exhibit B

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Fernando Leone, Esq. (SBN 147933)
1503 S. Coast Drive, Suite 100B , Costa Mesa, CA 92626
TELEPHONE NO.: 888-615-6765   FAX NO. *(Optional):* 888-660-8874
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiff Damian Kutzner and Harlen Chase, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana 92705
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Damian Kutzner and Harlen Chase, LLC

DEFENDANT/RESPONDENT: NEW REZ, LLC; et al.

**REQUEST FOR DISMISSAL**

CASE NUMBER: 30-2022-01288204-CU-OR

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☑ Without prejudice
   b. (1) ☑ Complaint   (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name):*   on *(date):*
   (4) ☐ Cross-complaint filed by *(name):*   on *(date):*
   (5) ☑ Entire action of all parties and all causes of action
   (6) ☐ Other *(specify):**

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☑ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: May 10, 2023

Fernando Leone, Esq.
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ *Fernando Leone*
(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶
(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*

4. ☐ Dismissal entered as requested on *(date):*

5 ☐ Dismissal entered on *(date):*   as to only *(name):*

6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed   ☐ means to return conformed copy

Date:   Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]
**REQUEST FOR DISMISSAL**
Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

**CIV-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Damian Kutzner and Harlen Chase, LLC<br>DEFENDANT/RESPONDENT: NEW REZ, LLC; et al. | CASE NUMBER:<br>30-2022-01288204-CU-OR |

---

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is (*check one below*):
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):*    ☐ Yes    ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____    ▶ _____

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)          (SIGNATURE)

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 1503 South Coast Drive#100B, Costa Mesa, CA 92626.

On the date set forth below, I served the following document described as: **REQUEST FOR DISMISSAL** on all interested parties in this action by placing [X] a true copy [   ] the original thereof enclosed in sealed envelopes addressed as follows:

| NAME & ADDRESS OF ATTORNEY | PHONE NUMBER | ATTORNEY FOR |
|---|---|---|
| Klinedinst Attorneys 801 K Street, Ste. 2100 Sacramento501 W Broadway, Suite 600 San Diego, CA 92101 | | Defendants |

[   ]      (BY FACSIMILE) the facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.  Pursuant to Rule 2008(e) (4), I caused the machine to print a record of the transaction.

**[X]**      (BY MAIL, 1013a, 2015.5 C.C.P.)
[   ]      I deposited such envelope in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.
**[X]**      I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[ X ]**      (STATE) I declare under penalty of perjury under the laws of the State of California that  the above is true and correct.

[   ]      (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 10, 2023, in Costa Mesa, California,

_____
AMANDA RUIZ